# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:22-cv-00273-MR

| | |
|---|---|
| TIMOTHY LYDA, | ) |
| Plaintiff, | ) |
| vs. | ) ORDER |
| LIBBY HARVEY, | ) |
| Defendant. | ) |

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment [Doc. 14] and Defendant's Motion to Seal [Doc. 16].

## I. PROCEDURAL BACKGROUND

Pro se Plaintiff Timothy Lyda ("Plaintiff") filed this action pursuant to 42 U.S.C. § 1983 against Defendants Lowell Griffin, identified as the Sheriff of Henderson County, North Carolina; the Henderson County Detention Facility (the "Jail"); the City of Hendersonville; and Libby Harvey, identified as a Jail Nurse. [Doc. 1]. In his unverified Complaint, Plaintiff alleged, in pertinent part, that he did not receive his blood pressure medication while he was detained at the Jail from April 9, 2021 to April 11, 2021; that Defendant Harvey refused to give him his blood pressure medication during medication administration time on April 9, 2021; that he immediately took his medication

when he was released from Jail on April 11, 2021; and that he ultimately suffered two six-inch blood clots in his right common iliac artery four months later, requiring a 10-hour surgery to remove. [Doc. 1-1 at 1].

Plaintiff's Complaint survived initial review on his Fourteenth Amendment deliberate indifference claim against Defendant Harvey. [Doc. 5]. Plaintiff's remaining claims, including his claims for negligence and medical malpractice, and all claims against Defendants Griffin, Henderson County Detention Facility, and City of Hendersonville were dismissed for Plaintiff's failure to state a claim for relief. [Id.].

On November 16, 2023, Defendant Harvey moved for summary judgment. [Doc. 14]. She argues that she is entitled to summary judgment because she was not deliberately indifferent to Plaintiff's serious medical needs and, even if she was, she is entitled to qualified immunity. [Doc. 15]. In support of her motion, Defendant Harvey submitted her own Affidavit, the Jail's medication verification and initiation of medication policies, the Plaintiff's Jail medical records, and unpublished case law. [Docs. 15-2 to 15-12, 18-19].

Thereafter, the Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in

which evidence could be submitted to the Court. [Doc. 20]. The Plaintiff was specifically advised that he "may not rely upon mere allegations or denials of allegations in his pleadings to defeat a summary judgment motion." [Id. at 2]. Rather, he must support his assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." [Id. (citing Fed. R. Civ. P. 56(c)(1)(a))]. The Court further advised that:

> An affidavit is a written statement under oath; that is, a statement prepared in writing and sworn before a notary public. An unsworn statement, made and signed under the penalty of perjury, may also be submitted. Affidavits or statements must be presented by Plaintiff to this Court no later than fourteen (14) days from the date of this Order and must be filed in duplicate.

[Id. at 3-4 (citing Fed. R. Civ. P. 56(c)(4))].

In response to Defendant's motion, Plaintiff submitted an unsworn response, internet printouts from medical websites regarding high blood pressure, unauthenticated partially redacted medical record excerpts, and a partial copy of an unidentifiable search warrant dated April 9, 2021. [See Docs. 21, 22]. Defendant replied to Plaintiff's response. [Doc. 23]. As noted, Plaintiff's Complaint was not verified or otherwise submitted under penalty of

3

Case 1:22-cv-00273-MR    Document 27    Filed 03/18/24    Page 3 of 15

perjury and, therefore, cannot be considered for its evidentiary value here. See Goodman v. Diggs, 986 F.3d 493, 498-99 (4th Cir. 2021) (holding that a district court is to consider verified prisoner complaints as affidavits on summary judgment "when the allegations contained therein are based on personal knowledge"). Thus, in terms of evidentiary forecast, Defendant's is unrefuted.

This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine

issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and construe all reasonable inferences and ambiguities against the movant and in favor of the nonmoving party. Wai Man Tom v. Hospitality Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020); see Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the

nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). That is, "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts…. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356 (1986) (citation and internal quotation marks omitted).

## III. FACTUAL BACKGROUND

Defendant's uncontroverted forecast of evidence shows the following.

At the relevant times, Defendant was employed by Comprehensive Providers, LLC, and worked as a nurse at the Henderson County Jail. [Doc. 15-2 at ¶ 2: Harvey Aff.]. Defendant remains and has been so employed for approximately five years. [Id.].

Comprehensive Providers provides medical care for the Jail. [Id. at ¶ 3]. Comprehensive Providers maintains a medication verification policy pursuant to which the active prescriptions of an arrestee are confirmed and verified before they can be administered to an arrestee. [Id. at ¶ 8; Doc. 15-3]. Before administering a medication to an arrestee, the medication verification policy requires the Jail provider, at minimum, to identify the

6

Case 1:22-cv-00273-MR Document 27 Filed 03/18/24 Page 6 of 15

patient and the outside prescriber, identify the name of the medication and the dosage to be dispensed, obtain directions for the use and stop date of the medication, and obtain the date on which the prescription was last filled and the quantity dispensed. [Doc. 15-3 at 2; see Doc. 15-2 at ¶ 10]. The Jail provider cannot dispense medication to an arrestee without this verification. [Doc. 15-2 at ¶ 10; Doc. 15-3 at 2 (providing that "[t]he option to decline should be invoked whenever medication is thought to be unnecessary or inappropriate based upon diagnosis, usage, drug type, drug indication, [or] dosage…")]. The decision not to dispense must be documented in the health record. [Id.].

Defendant Harvey's duties at the Jail include performing intake of arrestees to obtain their medical information, medical history, medications, and medical conditions. [Id. at ¶ 4]. In performing these duties, Defendant Harvey is required to follow Comprehensive Providers' medication verification policy. [See Doc. 15-2 at ¶¶ 5, 10]. In Defendant Harvey's experience, arrestees sometimes attempt to bring illegal substances into the Jail disguised in prescription bottles. As such, it is particularly important to follow the medication verification policy to prevent substance abuse and illegal substances in the Jail and to ensure that arrestees receive only the medication they are prescribed. [See Doc. 15-2 at ¶ 11].

On April 10, 2021, Defendant Harvey performed the intake on the Plaintiff. [Doc. 15-2 at ¶ 12]. As part of the intake, she took Plaintiff's blood pressure, which was 149/99 mmHg. [Id. at ¶ 13; Doc. 18 at 2]. In Defendant Harvey's experience, arrestees typically exhibit elevated blood pressure during intake "due to their adrenaline and nerves." [Id. at ¶ 13]. During intake, Plaintiff reported having high blood pressure and that he took Klonopin, Clonidine, and Cymbalta. Plaintiff's brother brought in Plaintiff's purported medications, which included the blood pressure medication Clonidine. [Id. at ¶ 14; see Doc. 18 at 3]. Defendant Harvey counted the number of pills in the bottle, and based on the date on the prescription, she concluded that Plaintiff was not compliant with his blood pressure medication. [Id.].

At intake, Plaintiff identified Walmart as his pharmacy. Defendant Harvey, therefore, called Walmart to verify Plaintiff's prescriptions. [Doc. 15-2 at ¶ 15; see Doc. 18 at 6]. According to the Walmart pharmacy, Plaintiff's current prescriptions were for Klonopin, Cymbalta, and Flexeril. [Id.; Doc. 18 at 6]. The pharmacist informed Defendant that Plaintiff had no active prescription for high blood pressure medication. [Doc. 15-2 at ¶ 15]. Defendant Harvey documented this in her intake note. [Id.; Doc. 18 at 6 ("Pharmacist states there are no hypertension medications that are active.")].

8

Case 1:22-cv-00273-MR   Document 27   Filed 03/18/24   Page 8 of 15

Because Plaintiff's pharmacy did not verify his blood pressure medication, Defendant Harvey was unable to dispense it to him.[1]  [Id. at ¶ 16].  A follow up appointment with medical was scheduled for the Plaintiff to determine whether he needed blood pressure medication.  [Doc. 15-2 at ¶ 20].

However, Plaintiff was released from the Jail on April 12, 2021, before this scheduled appointment.  [Doc. 15-2 at ¶¶ 17, 20].  During his two-day stay at the Jail, Plaintiff did not complain to Defendant Harvey regarding symptoms consistent with high blood pressure.  [Doc. 15-2 at ¶ 17]. Defendant Harvey was also not made aware that Plaintiff was suffering with such symptoms or any medical condition during this time.  [Id. at ¶ 18].  On April 12, 2021, Plaintiff's blood pressure was taken again.  It was 132/86 mmHg, which was significantly lower than his blood pressure at intake.  [Id. at ¶ 19].

Defendant Harvey was not aware that Plaintiff was suffering from a serious medical condition during his detention at the Jail and did not believe

---

[1] With his summary judgment materials, Plaintiff submitted what appears to be a photograph of a portion of a page of an unidentified medical record reflecting a prescription record for Clonidine HCl.  [See Doc. 22 at 9].  To the extent this is Plaintiff's medical record, it reflects prescriptions for Clonidine HCl active on April 6, 2020 – *a year before* Plaintiff's detention at the Jail at issue – and on April 15, 2021 – *three days after* Plaintiff was released from the Jail.  Neither prescription reflects for how long it was valid and, even if this record had been presented in a form acceptable at summary judgment, it would not support Plaintiff's contention that he had a valid prescription at the time of his detention or that Defendant Harvey was aware or should have been aware of one.

a single high blood pressure at intake constituted a serious medical condition. [Doc. 15-2 at ¶¶ 21-22]. Based on the prescription presented, the number of pills, and her conversation with Plaintiff's pharmacist, Defendant Harvey had no basis to believe that Plaintiff had a valid prescription for blood pressure medication. [Doc. 15-2 at ¶ 23]. Moreover, Defendant Harvey did not believe that Plaintiff would suffer any injury from not receiving blood pressure medication for two days. [Doc. 15-2 at ¶ 24].

## IV. DISCUSSION

### A. Deliberate Indifference[2]

A pretrial detainee's claim based on deliberate indifference to a serious medical need is properly brought pursuant to the Fourteenth Amendment. Short v. Hartman, 87 F.4th 593, 611 (4th Cir. 2023). To make out such a claim, a plaintiff must show that:

> (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had the condition and (b) that the defendant's action or inaction posed

---

[2] Plaintiff withdrew this claim in his response to Defendant's summary judgment motion [Doc. 21 at 2, 4 (out of order)] but recently filed an improper letter directed to the Undersigned in which he purports to reinstate the claim [Doc. 25]. Despite that the Court would typically strike such a letter from the docket, the Court will nonetheless address Plaintiff's deliberate indifference claim here because Plaintiff errantly believes his claims of negligence and medical malpractice survived the Court's initial review of his Complaint. [See Doc. 21 at 2].

> an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

See id. at 611. Under this standard, a plaintiff need not show that the defendant actually knew of the detainee's serious medical condition but must show that the defendant acted or failed to act "in the face of an unjustifiably high risk of harm is either known or so obvious that it should be known." Id. Negligence or the accidental failure "to do right by the detainee," however, are not enough. Id. at 611-12.

The forecast of evidence here fails to show that Defendant Harvey was deliberately indifferent to Plaintiff's serious medical need under the Fourteenth Amendment. First of all, Plaintiff has not presented a forecast of evidence that he actually suffered from high blood pressure on the dates in questions. Moreover, there is no forecast of evidence from which a reasonable juror could conclude that Defendant Harvey intentionally, knowingly, or recklessly failed to address any such risk. There is also no forecast before the Court that Defendant's failure to give Plaintiff blood pressure medication for two days posed an unjustifiably high risk of harm. Rather, the forecast of evidence shows that Defendant Harvey learned from Plaintiff's pharmacist when verifying his medications through the pharmacy that Plaintiff reported, that he did not have an active prescription for any blood pressure medication. The forecast of evidence also shows that

Defendant Harvey followed the medication verification policy set forth by the Jail medical provider and that she understood that such policy was important to preventing substance abuse in the Jail and to ensure arrestees receive only the medications they are prescribed. There is no evidence that the Defendant had any authority to prescribe any new medications for the Plaintiff, even if she thought they were needed. The forecast of evidence also shows that, while Plaintiff's blood pressure was somewhat elevated at intake, in Defendant Harvey's experience, arrestees often have elevated blood pressures at intake due to "adrenaline and nerves" and that Plaintiff's blood pressure was significantly reduced on the day of his release two days later. Moreover, there is no forecast of evidence that Plaintiff was harmed as a result of his not receiving blood pressure medication for a period of two days. While Plaintiff alleged in his Complaint having undergone surgery to remove two giant blood clots in his leg four months after his detention, he forecasts no evidence whatsoever of a causal connection between the denial of the medication and this injury or surgery.

As such, there is no genuine issue of material fact on this claim and the Court will grant Defendant's motion for summary judgment.

## B. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because Plaintiff has not presented a forecast of evidence that Defendant violated a constitutional right, Defendant is entitled to qualified immunity. As such, summary judgment for Defendant would also be proper on this ground.

## V. Defendant's Motion to Seal

Defendant Harvey, through counsel, moves the Court to seal the Plaintiff's medical records she submitted in support of her summary judgment motion because they "contain confidential information of the Plaintiff in this case." [Doc. 17 at 3]. Defendant Harvey filed these documents under seal. [See Docs. 18, 19].

Before sealing a court document, the Court must "(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." Ashcraft v. Conoco, Inc., 218 F.3d 288, 302 (4th Cir. 2000). In the present case, the public has been provided with adequate notice and an opportunity to object to Defendant Harvey's motion. Defendant filed her motion in November 2023, and it has been accessible through the Court's electronic case filing system since that time. Moreover, the public's right of access to Plaintiff's medical record is substantially outweighed by the Plaintiff's competing interest in protecting the details of such information. Having considered less drastic alternatives to sealing these particular documents, the Court concludes that sealing these records is necessary to protect the

Plaintiff's privacy interests. As such, the Court will grant Defendant Harvey's motion to seal and order that Plaintiff's medical record remain under seal.

## VI. CONCLUSION

For the reasons stated herein, the Court will grant Defendant's Motion for Summary Judgment and Defendant's Motion to Seal.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Summary Judgment [Doc. 14] is **GRANTED**; and this action is dismissed with prejudice.

**IT IS FURTHER ORDERED** that Defendant's Motion to Seal [Doc. 16] is **GRANTED** and the documents filed at Docket Numbers 18 and 19 shall remain sealed.

The Clerk is respectfully instructed to terminate this action.

**IT IS SO ORDERED**.

Signed: March 18, 2024

Martin Reidinger
Chief United States District Judge